OLAVARRIA & CO., INC. *v.* UNITED STATES (No. 4973)[1]

United States Court of Customs and Patent Appeals, January 6, 1960

*Barnes, Richardson & Colburn, Edward N. Glad,* (*Joseph Schwartz,* trial attorney, of counsel) for appellant.

*George Cochran Doub,* Assistant Attorney General, and *Richard E. FitzGibbon,* Chief, Customs Section for the United States.

[Oral argument December 1, 1959, by Mr. Schwartz and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Third Division, C.D. 2008, dismissing certain protests by the importer on the ground of untimeliness. The merchandise, claimed by appellant to be sugar syrup, was imported in 1943 and 1944 and the entries were allegedly liquidated in 1945 and 1946. The instant protests were filed April 4, 1955.

The importer contends it was under no obligation to file protests because notices of liquidation were never given in the manner required by law. The Customs Court held that giving of proper notice was to be presumed; that the importer had not presented evidence sufficient to overcome that presumption; and that, even if notice was not properly given, the importer was barred from obtaining the relief sought because of its unreasonable delay in filing the protests.

It is, of course, presumed that public officials perform their duties in the manner required by law. *V. Mueller & Co.* v. *United*

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28, United States Code, Section 294(d).

*States*, 28 CCPA 249, C.A.D. 152; *United States* v. *Henry W. Peabody & Co.*, 40 CCPA 59, C.A.D. 498. It was therefore incumbent on the importer to show by competent evidence that notice of liquidation of the merchandise was not given in the manner required by the applicable statutes and regulations, of which the pertinent portions read:

SEC. 505. Payment of Duties.

* * * Upon receipt of the appraiser's report and of the various reports of landing, weight gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, * * *.

SEC. 16.2 Procedure; notice of liquidation.—

* * * * * * *

(d) * * * The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers * * *.

Appellant contends first, that the notices were not posted in a "conspicuous" place and, second, that the building in which they were posted was not the customhouse.

The merchandise was entered at West Palm Beach, Florida. There is no evidence relating specifically to the notice of liquidation of this merchandise, official papers having been destroyed as provided by law, but the importer seeks to show that, when liquidation took place the notices at West Palm Beach were not being posted in a conspicuous place. It appears to be agreed that the merchandise was liquidated in 1945 or 1946.

Appellant's principal witness was Robert E. Lund, who was a customs clerk at West Palm Beach in the years 1943 through 1946. His testimony as to the posting of notices during that period was given in 1956 and was based entirely on recollection. It is, therefore, not surprising that such testimony is vague in many respects.

Lund testified that in 1945 and 1946 notices of liquidation were posted in a building in Riviera Beach, where customs business was transacted, by placing them on "a clip board or what might be termed a clip board" which was kept "on a desk or on a file cabinet." He further stated that at a later time the notices were hung on a bulletin board. On cross-examination he admitted they might have been displayed in that manner in 1946, but not in 1945. It is clear from his testimony as a whole that he had no exact recollection of the time when the notices were first hung on the board. We therefore agree with the Customs Court that there is nothing in Lund's testimony from which a sound conclusion can be reached as to the posting practice in effect in 1945 and 1946.

 Moreover, even assuming the notices were displayed on a desk or file cabinet instead of on a bulletin board or wall, that fact alone would not necessarily establish that they were not posted in a "conspicuous" place within the meaning of Section 16.2($d$) of the Customs Regulations. Lund's testimony does not establish that the notices were not prominently displayed or that they were not readily accessible; on the contrary, he stated that they were always available for examination from 1944 on, and that he always knew where to go to find them.

The only other evidence as to the manner of posting notices of liquidation in 1945 and 1946 is that of appellant's witness King, who had no personal knowledge, but testified to a conversation in 1951 with someone at the customhouse whose name he did not know, but who is alleged by appellant to have been one E. F. Fairclough, the deputy collector at West Palm Beach in 1948, now deceased. King stated that Fairclough told him the notices were laid on a counter or desk up to and including 1948, after which they were affixed to a wall.

 The Customs Court held King's testimony inadmissible as hearsay. We find it unnecessary to pass on that holding, since we agree with the further finding of the court that the testimony, even if admissible, is entitled to little weight. It represents King's recollection in 1956 of a conversation he had in 1951, in which the person to whom he talked purportedly gave his recollection as to events three or more years earlier.

In support of its contention that the Riviera Beach building was not the customhouse, appellant relies on a private publication, the "Customhouse Guide" which for 1945 and 1946, lists the customhouse for West Palm Beach as being in the "Federal Building" in that city, whereas for 1956 it was listed as the Riviera Beach building. We agree with the Customs Court that neither that publication nor the testimony given by its editor, John F. Budd, is sufficient to prove the location of the customhouse. Budd did not claim to know, of his own knowledge, anything about the situation in West Palm Beach or Riviera Beach, and the unofficial publication cannot be accepted as establishing the accuracy of the statements contained in it.

Appellant also cites a 1954 ruling of the Treasury Department stating that the limits of the customs port of West Palm Beach "are extended to include the territory embracing * * * the municipality of Riviera Beach, Florida." While it might be a reasonable inference from that language that Riviera Beach was not included in the customs port immediately prior to that ruling, there is nothing in the ruling to show what the situation was in 1945 or 1946.

Appellant's witness Lund stated that the Riviera Beach building, as well as the Federal Building, was "known as the Customhouse" and

that "it was where all shippers' export declarations and where all entries were accepted and passed." Similarly, appellant's witness Boggs, when asked where the customhouse was in 1944, replied "At the present location, that is what we call the Customhouse," and also stated that the "present location" was "at the east end of the Port Road, in Riviera Beach."

We agree with the Customs Court that appellant's evidence, in view of its inconclusive nature and of the long time elapsing between the liquidation of the merchandise and the presentation of the evidence, cannot be accepted as overcoming the presumption that the merchandise was duly liquidated and that notice of such liquidation was properly posted as required by the applicable statute and regulation. Section 514 of the Tariff Act of 1930 provides that liquidation shall be final unless a protest is filed within sixty days after the date of liquidation; accordingly, the instant protests, filed in 1955, were properly held to be untimely.

The judgment of the United States Customs Court is *affirmed*.